UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALE CUCINELLA | ) |
| | ) |
| v | ) |
| | ) |
| DALE SILVERMAN and | ) |
| JOSEPH P. RUSNAK | ) |

## COMPLAINT

NOW COMES Plaintiff, Dale Cucinella by and through her counsel, Anthony Klytta complaining of Dale Silverman and Joseph P. Rusnak and in support further states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S. Code § 1332. (a)The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between- (1) citizens of different States;

2. Dale Cucinella is a resident of the State of Illinois.

3. Dale Silverman is a resident of the State of Tennessee.

4. Joseph P. Rusnak is a resident of the State of Tennessee.

5. The amount in controversy is in excess of $75,000.

6. Venue is proper because Dale Cucinella is a resident and majority owner of D2 Marketing LLC, a Tennessee LLC.

### FACTS COMMON TO ALL COUNTS

7. D2 Marketing LLC ("D2") is an LLC licensed in the state of Tennessee. A copy of the operating agreement is attached as Exhibit 1.

8. Per the operating agreement, Tennessee law is to govern D2 Marketing LLC.

9. Per the operating agreement of D2, Dale Cucinella ("Cucinella") has a 51% ownership interest in the LLC while Dale Silverman ("Silverman") has a 49% ownership interest.

10. D2 has bank accounts held at Truist, SunTrust Bank and Itasca Bank & Trust Co.

11. Dale Silverman ("Silverman") is a member of National Imports LLC ("National Imports").

12. Silverman initiated a judicial dissolution in Tennessee with Joseph P. Rusnak as attorney. Attached as Exhibit 2.

13. Joseph P. Rusnak is/was the attorney for National Imports. See attached as Exhibit 3.

14. Silverman linked the bank accounts of D2 and National Imports. See attached as Exhibit 4.

15. In 2018, Silverman wrote by hand numerous checks to himself and National Imports along with writing checks to D2 and they are not properly recorded. The check numbers are 1012, 1013, 1016, 1020, 1023, 1025, 1028, 1030, 1031, 1039, 1045, 1079, 1049, 1050, 1051, 1047, 1060. The checks totaled $370,890.20. It is unclear what these checks were used to pay for or why they were tendered to Silverman or National Imports.

16. In 2019, Silverman wrote by hand numerous check to himself and National Imports along with writing checks to D2 and they are not property recorded. The check numbers are 1063, 1102, 1065, 1066, 1084, 1089, 1094, 1092, 1100, 1063, 1065, and 1067. Silverman also wired himself three times with no entry as to why the wire was set out. The wires totaled $2,038. The checks totaled $39,222.46. It is unclear what these checks were used to pay for or why they were tendered to Silverman or National Imports.

17. In 2020, Silverman wrote by hand numerous check to himself and National Imports along with writing checks to D2 and they are not property recorded. The check numbers are 1101, 1103, 1111, 1112, 1114, 1116, 1115, 1116, 1120, 1123, 1132, and 1136. The checks totaled $68,481.56. It is unclear what these checks were used to pay for or why they were tendered to Silverman or National Imports.

18. In 2021, Silverman wrote by hand numerous check to himself and National Imports along with writing checks to D2 and they are not property recorded. The check numbers are 1142, 1143, 1146, 1148, 1177, 1182, 1013, 1195, and 1197. The checks totaled $29,838.27. It is unclear

what these checks were used to pay for or why they were tendered to Silverman or National Imports.

19. In 2022, Silverman wrote by hand numerous check to himself and National Imports along with writing checks to D2 and they are not property recorded. The check numbers are 1152, 1156, 1008, 1011, 1013, 1157, 1158, 1016, 1160, 1017, 1018, 1168, 1169, 1022 and 1170. The checks totaled $101,821.96. There were also two interaccount transfers out in the amount of $10,000 each with no record. It is unclear what these checks were used to pay for or why they were tendered to Silverman or National Imports.

20. In 2023, Silverman wrote by hand numerous check to himself and National Imports along with writing checks to D2 and they are not property recorded. The check numbers are 1172, 1173, 1216, 1205, 1211, 1215, 1044, 1027, 1032, 1033, 1041, 1042, 1043, 1045 and 1044. The checks totaled $191,599.36. It is unclear what these checks were used to pay for or why they were tendered to Silverman or National Imports.

21. In 2024, Silverman wrote by hand numerous check to himself and National Imports along with writing checks to D2 and they are not property recorded. The check numbers are 1047, 1049, 1050, 1048, 1051, 1052, 1053, 1054, 1057, 1056, 1055, 1216, 1059, 1058, 1217, 1060, 1062 and 1067. The checks totaled $115,535.29. There was also two interbank transfers in the amount of $8,000 and $10,000 respectfully that were put into the D2 account and then transferred out the next day. It is unclear what these checks were used to pay for or why they were tendered to Silverman or National Imports.

## COUNT I – BREACH OF FIDUCIARY DUTY

22. Cucinella repeats and realleges paragraph of 1 - 20 as paragraph 21 of this count as though fully set forth herein.

23. "In order for Plaintiff to prevail on his breach of fiduciary duty claim against John Doerr, he must establish that Doerr acted out of 'malice, avarice, or self-interest.' Reardon, 213 S.W.3d at

788." Rennell v. Through The Green, Inc., No. M2008-01906-COA-R3-CV (Tenn. App. 7/31/2009), No. M2008-01906-COA-R3-CV. (Tenn. App. Jul 31, 2009)

24. The directors and officers of a corporation owe a fiduciary duty to the corporation and to its shareholders. Deadrick v. Bank of Commerce, 100 Tenn. 457, 45 S.W. 786, 788 (1898) (observing that a corporation's "officers or agents stand in a fiduciary relation to both" the corporate entity and shareholders); Neese v. Brown, 218 Tenn. 686, 405 S.W.2d 577, 581 (1964) (observing that "a director, or other officer, of a corporation, although not responsible for errors of judgment[,] is a fiduciary charged with the duty of caring for the property of the corporation and managing its affairs honestly and in good faith") (internal quotation marks omitted); Knox-Tenn Rental Co. v. Jenkins Ins., Inc., 755 S.W.2d 33, 36 (Tenn.1988) (stating "[a] corporate officer must at all times be loyal to his trust and act in good faith and unselfishly toward the corporation and its stockholders") (quoting Hayes v. Schweikart's Upholstering Co., 55 Tenn.App. 442, 402 S.W.2d 472, 483 (1965) (citing 19 C.J.S. Corporations § 761b)). Sanford v. Waugh &amp; Co., Inc., 328 S.W.3d 836 (Tenn. 2010)

25. As we held in Walsh v. BA, Inc., No. 02A01-9703-CH-00051, 1997 WL 634528 (Tenn. Ct. App. Oct. 16, 1997) (no perm. app. filed) (Walsh I), in order to prevail on a claim for breach of fiduciary duty against one of its partners, a partnership must show not only that the partner benefited from the challenged transaction, but that the partnership was harmed by the transaction. Walsh I, 1997 WL 634528, at *2 n.2. Walsh v. Ba, Inc., 37 S.W.3d 911 (Tenn. App. 2000).

26. "In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." Ann Taylor Realtors, Inc. v. Sporup, No. W2010-00188-COA-R3-CV, 2010 WL 4939967, at *3 (Tenn. Ct. App. Dec. 3, 2010) (citing 37 C.J.S.

Fraud § 15 (2008)). White v. Miller, No. M2018-00381-COA-R3-CV (Tenn. App. Oct 05, 2018).

27. Silverman had a fiduciary relationship with regard to D2 and with regard to Cucinella.

28. Silverman had access to bank accounts under D2.

29. Silverman breached his fiduciary duty when he refused access to D2 bank accounts. See attached Exhibit 5.

30. Silverman breached his fiduciary duty to D2 by "locking out" Cucinella from completing orders through D2. See exhibit 6.

31. Silverman breached his fiduciary duty to D2 by freezing the line of credit without authorization. See exhibit 7.

32. Silverman breached his fiduciary duty by setting up another bank account without the knowledge of Cucinella. See exhibit 8.

33. Silverman breached his fiduciary duty when he used D2 clients to profit his other business National Imports.

34. Silverman breached his fiduciary duty when he took D2 funds out of the D2 accounts without the authorization of Cucinella.

35. Cucinella is injured because she has lost clients of D2 and has monetary damages from the unauthorized transfer of funds out of D2.

WHEREFORE, Cucinella pray for the entry of a judgment in excess of $75,000.00 in compensatory damages; for an award of punitive damages; for an award of pre-judgment interest; costs and an award of attorney's fees; and any such other and further relief as this Honorable Court deems is just and equitable.

## COUNT II - EMBEZZLEMENT

36. Cucinella repeats and realleges paragraph of 1 - 33 as paragraph 34 of this count as though fully set forth herein.

37. Embezzlement is defined, somewhat redundantly, in T.C.A. Sec. 39-3-1121: Any officer, agent, employee or clerk of any incorporated company, or any clerk, employee or agent of a co-partnership or private person, who embezzles or fraudulently converts to his own use any money or property of any other, which has come to his possession, or is under his care by virtue of such employment, shall, on conviction, be punished as in case of larceny. State v. Fishburn, 656 S.W.2d 879 (Tenn. Crim. App. 1983).

38. While the statutory term "embezzles" is not further defined, the cases make it clear that to constitute the offense, the property misappropriated must come directly from a third person into the hands of the defendant in the course of his employment and must be appropriated by the employee before it goes into the possession of the employer. Hill v. State, supra, 17 S.W.2d at 914. Thus, in State v. Matthews, 143 Tenn. 463, 226 S.W. 203, 205 (1920), it was held that "[i]f the money or property goes into the possession of the employer before it goes into the possession of the employee, his taking and appropriating it does not constitute embezzlement, but larceny."… State v. Fishburn, 656 S.W.2d 879 (Tenn. Crim. App. 1983)

39. "Embezzlement is defined by statute as (1) a fraudulent (2) conversion to one's own use (3) by an officer, employee or clerk (4) of money or property (5) in his possession or care by virtue of his employment. T.C.A. § 39-4232." State v. Knight, 616 S.W.2d 593 (Tenn. 1981).

40. Silverman used his access to D2 clientele roster to illicit customers for his other business, National Imports. See attached invoices as Exhibit 9.

41. Silverman steered customers away from D2 perpetrating a fraud on both D2 and Cucinella.

42. Silverman steering clients away from D2 resulting in lost profits for the LLC.

43. On information and belief, Silverman is the only member of National Import but even if he is not he is associated with that LLC and is a member.

WHEREFORE, Cucinella prays for the entry of a judgment in excess of $75,000.00 in compensatory damages; for an award of punitive damages; for an award of pre-judgment

interest; costs and an award of attorney's fees; and any such other and further relief as this Honorable Court deems is just and equitable.

### COUNT III - CONVERSION

44. Cucinella repeats and realleges paragraph of 1 - 41 as paragraph 42 of this count as though fully set forth herein.

45. Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. Barger v. Webb, 216 Tenn. 275, 278, 391 S.W.2d 664, 665 (1965); Lance Prods., Inc. v. Commerce Union Bank, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988). Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. Kinnard v. Shoney's, Inc., 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000); Mammoth Cave Prod. Credit Ass'n v. Oldham, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977). H & M Enterprises Inc. v. Murray (Tenn. App. 2002).

46. Property may be converted in three ways. First, a person may personally dispossess(FN1) another of tangible personalty. Restatement (Second) of Torts 223(a) (1965). Second, a person may dispossess another of tangible property through the active use of an agent. See, e.g., McCall v. Owens, 820 S.W.2d 748, 751 (Tenn. Ct. App. 1991); 1 Stuart M. Speiser et al., The American Law of Torts 3.4 (1983) ("The American Law of Torts") (stating that "those who ratify and adopt acts of a wrongdoer done for their benefit" may be liable). Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for "receiving a chattel."(FN2) Restatement (Second) of Torts 223(d). H & M Enterprises Inc. v. Murray (Tenn. App. 2002).

47. Silverman appropriated the property of Cucinella by withdrawing funds from D2 accounts without authorization.

48. As shown above, Silverman makes numerous transactions over several years without imputing the reason for the transfers. These transfers are to himself and to his other LLC.

49. Silverman makes numerous inter-account transfers between his various business accounts converting D2 assets in the process. See attached as exhibit 10.

50. All of these transfers were without Cucinella's authorization or knowledge.

WHEREFORE, Cucinella prays for the entry of a judgment in excess of $75,000.00 in compensatory damages; for an award of punitive damages; for an award of pre-judgment interest; costs and an award of attorney's fees; and any such other and further relief as this Honorable Court deems is just and equitable.

## ACCOUNTING

51. Cucinella repeats and realleges paragraph of 1 - 48 as paragraph 49 of this count as though fully set forth herein.

52. Silverman's actions as enumerated above were calculated to deceive, including all of his acts, omissions and concealment involving breach of legal and equitable duties, trust or confidence, and resulted in damage to Cucinella that requires a full accounting.

53. Accordingly, Silverman should be ordered to account for all of the embezzled funds, and the imposition of a constructive trust in all such stolen corporate and client assets is appropriate.

WHEREFORE, Cucinella requests the following relief: (a) That Silverman be ordered to account for the embezzled funds; (b) that a constructive trust be imposed upon Silverman's property in that amount; and, (c) the entry of a money judgment for compensatory damages, punitive damages, and costs against Silverman, and for such other further relief this Honorable Court deems is just and equitable.

## VIOLATION OF RULE 1.7 – CONFLICT OF INTEREST: CURRENT CLIENTS

54. Cucinella repeats and realleges paragraph of 1 - 51 as paragraph 52 of this count as though fully set forth herein.

55. **RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS**(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

56. On information and belief, Mr. Rusnak represents or has represented National Imports in previous matters.  See attached Exhibit 3.

57. Cucinella as majority member of D2 never hired Mr. Rusnak.

58. National Imports is in direct competition with D2 and has benefited from the actions of Silverman.

59. Mr. Rusnak's representation of Rusnak and National Imports in the Tennessee action is in direct conflict with their prior/current representation of D2 Marketing.

WHEREFORE, Cucinella prays that Mr. Rusnak's representation of Rusnak and National Imports be terminated.

                Respectfully submitted,

                /s/ Anthony Klytta
                One of the attorneys for Plaintiff

Anthony Klytta
1645 Birchwood
Des Plaines, IL 60018
anthonymdk@yahoo.com
773-727-2225